*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

CANNARBOR INC.,

      Plaintiff-Appellant,

v

DEPARTMENT OF TREASURY,

      Defendant-Appellee.

FOR PUBLICATION
December 16, 2025
8:39 AM

No. 370919
Court of Claims
LC No. 23-000070-MT

Before: KOROBKIN, P.J., and MURRAY and MALDONADO, JJ.

MALDONADO, J.

Plaintiff, Cannarbor, Inc., appeals as of right the amended order resolving claims entered by the Court of Claims on May 9, 2024, as well as the November 16, 2023 opinion and order granting partial summary disposition in favor of defendant, the Department of Treasury. On appeal, plaintiff argues that the Court of Claims erred by concluding that § 12[1] of the Michigan Regulation and Taxation of Marihuana Act (MRTMA), MCL 333.27951 *et seq.*, which allows "marihuana establishments" to deduct from net income "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying out a trade or business," does not apply to medical marijuana provisioning centers licensed under the Medical Marihuana Facilities Licensing Act (MMFLA), MCL 333.27101 *et seq.* We affirm.

## I. BACKGROUND

This appeal concerns the interplay between three Michigan statutes governing the sale and use of marijuana:[2] the Michigan Medical Marihuana Act (MMMA), MCL 333.26421 *et seq.*, an initiative passed by the electorate as 2008 IL 1, to allow under state law the use of medical marijuana; the MMFLA, enacted by the Legislature as 2016 PA 281, to regulate medical marijuana

---

[1] MCL 333.27962.

[2] We use the common spelling of marijuana, unless quoting statutes or documents in the lower-court record that refer to "marihuana."

facilities; and the MRTMA, an initiative passed by Michigan voters as 2018 IL 1, to legalize under state law the recreational use of marijuana by adults over 21.

Plaintiff has operated a medical marijuana facility in Ann Arbor since October 2016. In November 2018, after passage of the MMFLA, plaintiff obtained a license to operate a medical marijuana facility. In November 2019, after passage of the MRTMA, plaintiff also obtained a license to dispense marijuana for adult recreational use.

Beginning in January 2022, defendant audited plaintiff's sales tax and corporate income tax returns. The auditor noted that plaintiff had subtracted ordinary business expenses from its federal taxable income for the years 2018 through 2020. The auditor explained that plaintiff was permitted to deduct ordinary business expenses for its adult-use marijuana business, but was not allowed the same deductions for its medical marijuana business, because medical marijuana provisioning centers are not "marihuana establishments" under the MRTMA. Therefore, the auditor adjusted plaintiff's taxable income for 2018 through 2020, and defendant sent plaintiff three final bills for taxes for 2018, 2019, and 2020, respectively, assessing taxes and interest totaling $138,825.33.

Plaintiff filed a complaint in the Court of Claims alleging in Count I that it was a "marihuana establishment" as defined by MCL 333.27953(*l*) and was thus entitled to deduct all ordinary and necessary business expenses incurred in carrying out its medical marijuana business. In Count II, plaintiff alleged that defendant's denial of the deduction and addition back of amounts to increase its income "violate the due process, equal protection and commerce clauses of the Michigan and US constitutions."

Plaintiff then filed a motion for summary disposition MCR 2.116(C)(10), and defendant, in turn, sought partial summary disposition of Count I in its favor under MCR 2.116(I)(2). The Court of Claims entered an order reassigning this case to another judge and consolidating it with another case between these parties arising from the sales tax audit. Following oral arguments, the court issued opinions and orders in both cases. In this case, the court denied plaintiff's motion under MCR 2.116(C)(10) and granted defendant's motion for partial summary disposition as to Count I under MCR 2.116(I)(2). Plaintiff now appeals the lower court's determinations regarding Count I of its complaint.

## II. STANDARDS OF REVIEW

The trial court's decision on a motion for summary disposition is reviewed de novo. *McMaster v DTE Energy Co*, 509 Mich 423, 431; 984 NW2d 91 (2022). A motion for summary disposition under MCR 2.116(C)(10) tests the factual sufficiency of a claim; the court must consider all evidence submitted by the parties in the light most favorable to the opposing party and may grant a motion under MCR 2.116(C)(10) only when the record does not leave open an issue upon which reasonable minds might differ. *McMaster*, 509 Mich at 431. Issues of statutory construction are also reviewed de novo. *Id*.

## III. ANALYSIS

We conclude that the Court of Claims correctly viewed the MRTMA in the context of the entire legislative scheme, including the MMMA and MMFLA, and correctly denied plaintiff's motion for summary disposition under MCR 2.116(C)(10) and granted defendant's motion for partial summary disposition under MCR 2.116(I)(5).

In November 2008, Michigan voters approved the MMMA with the passage of 2008 IL 1, "to allow a limited class of individuals the medical use of marijuana," as "an 'effort for the health and welfare of [Michigan] citizens.' " *People v Kolanek*, 491 Mich 382, 393-394; 817 NW2d 528 (2012) (alteration in original).

Eight years later, the Legislature passed the MMFLA to regulate medical marijuana growers and provisioning centers. The MMFLA imposed a 3% tax on the gross retail receipts of each "provisioning center," but also provided that this tax would no longer apply 90 days after the effective date of a law "authorizing the recreational or nonmedical use of marihuana in this state . . . ." MCL 333.27601(1). The MMFLA defines a "marihuana facility" as "a location at which a licensee is licensed to operate under this act," MCL 333.27102(*l*), and a "provisioning center" as "a licensee that is a commercial entity located in this state that purchases marihuana from a grower or processor and sells, supplies, or provides marihuana to registered qualifying patients, directly or through the patients' registered primary caregivers," MCL 333.27102(w).

To implement the MMFLA, the Legislature created the Medical Marihuana Licensing Board, within the Department of Licensing and Regulatory Affairs. MCL 333.27301(1), as enacted by 2016 PA 281. In 2019, Executive Reorganization Order 2019-2 transferred the duties, powers, and responsibilities of the Medical Marihuana Licensing Board to the newly created Marijuana Regulatory Agency. MCL 333.27001. In April 2022, another executive order renamed that agency the Cannabis Regulatory Agency (CRA). ERO 2022-1. See also MCL 333.27002(1).

In 2018, Michigan voters approved the MRTMA to legalize under state law the nonmedical use of marijuana for adults over the age of 21, and "to control the commercial production and distribution of marihuana under a system that licenses, regulates, and taxes the businesses involved." MCL 333.27952. The MRTMA states its purpose as follows:

> The purpose of this act is to make marihuana legal under state and local law for adults 21 years of age or older, to make industrial hemp legal under state and local law, and to control the commercial production and distribution of marihuana under a system that licenses, regulates, and taxes the businesses involved. The intent is to prevent arrest and penalty for personal possession and cultivation of marihuana by adults 21 years of age or older; remove the commercial production and distribution of marihuana from the illicit market; prevent revenue generated from commerce in marihuana from going to criminal enterprises or gangs; prevent the distribution of marihuana to persons under 21 years of age; prevent the diversion of marihuana to illicit markets; ensure the safety of marihuana and marihuana-infused products; and ensure security of marihuana establishments. To the fullest

extent possible, this act shall be interpreted in accordance with the purpose and intent set forth in this section. [MCL 333.27952.]

The MRTMA imposes a 10% excise tax "on each marihuana establishment," MCL 333.27963(1), but expressly provides that the tax does not apply to medical marijuana sold or transferred under the MMMA or the MMFLA. MCL 333.27963(4)(b) and (c). The MRTMA defines "marihuana establishment" as "a marihuana grower, marihuana safety compliance facility, marihuana processor, marihuana microbusiness, marihuana retailer, marihuana secure transporter, or any other type of marihuana-related business licensed by the [CRA]." MCL 333.27953(*l*). The MRTMA also provides that when computing net income for state tax purposes, "marihuana establishments" may deduct "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying out a trade or business." MCL 333.27962.

The central issue in this case is whether plaintiff's medical marijuana facility fits the statutory definition of "marihuana establishment" under MCL 333.27953(*l*), and thus may deduct its ordinary and necessary business expenses from its net income.

Defendant first addressed this issue in a 2020 Revenue Administrative Bulletin, RAB 2020-17. Observing that all businesses are entitled to deduct the costs of goods sold, which includes expenses such as labor, raw materials, and production, defendant explained that the ordinary and necessary expenses of a business are not one and the same with the cost of goods sold, and concluded that the deduction was available only to businesses licensed under the MRTMA, not to businesses licensed under the MMFLA.[3]

Defendant addressed this issue in greater detail in RAB 2022-26, the purpose of which was to "explain and clarify" the expense deduction provided under the MRTMA.[4] After explaining that "ordinary and necessary" business expenses include items such as office-space rental, office equipment, and supplies for the business, defendant again concluded that the deduction was not available to medical marijuana facilities licensed by the CRA under the MMFLA. Acknowledging that the MRTMA defines "marihuana establishment" as including " 'any other type of marihuana-related business' licensed by the CRA," defendant observed that "it could be argued that the income tax expense deduction also applies to marihuana-related businesses licensed under the MMFLA and other marihuana-related statutes that require CRA licensure." However, defendant asserted that if medical marijuana facilities licensed by the CRA were included within the MRTMA's definition of marihuana establishments, those facilities would be subject to "various restrictions, requirements, and limitations that the MRTMA explicitly places upon 'marihuana establishments,' " including the restriction against selling marijuana not "produced, distributed,

---

[3] Michigan Department of Treasury, RAB 2020-17, *Taxation Of Adult-Use (Recreational) Marihuana Under The Michigan Regulation And Taxation Of Marihuana Act* <https://www.michigan.gov/taxes/rep-legal/rab/rabhtml/2020/revenue-administrative-bulletin-2020-17> (accessed November 25, 2025).

[4] Also available at <https://www.michigan.gov/taxes/rep-legal/rab/2022-revenue-administrative-bulletins/revenue-administrative-bulletin-2022-26> (accessed November 25, 2025).

and taxed in compliance with the MRTMA." Defendant described this as an "unworkable result that is also in conflict with the provisions of the MMFLA," and concluded that the reference to " 'any other type of marihuana-related business' is an acknowledgement that the CRA may have the authority to license other types of businesses under the MRTMA in the future."

"The paramount rule of statutory interpretation is . . . to effect the intent of the Legislature." *In re Casey Estate*, 306 Mich App 252, 256; 856 NW2d 556 (2014) (quotation marks and citation omitted). When a statute is passed into law by initiative, as is the case with both the MMMA and the MRTMA, the intent of the electors governs the statute's interpretation. *Michigan v McQueen*, 493 Mich 135, 147; 828 NW2d 644 (2013). Therefore, the court must "determine the intent of the electorate . . . rather than the intent of the Legislature." *People v Hartwick*, 498 Mich 192, 209-210; 870 NW2d 37 (2015). The interpretation must be drawn from the plain language of the statute, which "provides 'the most reliable evidence' of the electors' intent." *Id*. at 210, quoting *McQueen*, 493 Mich at 147. If the language of the statute is unambiguous, the court must conclude that the electors intended the clearly expressed meaning. *McQueen*, 493 Mich at 147. However, in the case of initiatives, a court must also "place 'special emphasis on the duty of judicial restraint.' " *Hartwick*, 498 Mich at 210, quoting *Schmidt v Dep't of Ed*, 444 Mich 236, 241-252; 490 NW2d 584 (1992). The court must examine the statute as a whole, in the context of the entire legislative scheme and consider the entire text, in view of the logical relation of its parts. *Ally Fin Inc v State Treasurer*, 502 Mich 484, 493; 918 NW2d 662 (2018).[5]

In this case, the inclusion of "any other type of marihuana-related business licensed by the [CRA]" in the definition of "marihuana establishment," MCL 333.27953(*l*), when read in isolation, might suggest that medical marijuana facilities, which are licensed by the CRA, are included as "marihuana establishments" under the MRTMA, and therefore entitled to the deduction for ordinary and necessary businesses expenses under MCL 333.27962. However, the Court of Claims properly declined to read that definition in isolation and examined the statute as a whole in the context of the statutory scheme. As the court correctly observed, "[t]he stated purposes of the MRTMA do not include regulation of medical marijuana," which is regulated by the MMFLA. Examining the definition of "marihuana establishment" in MCL 333.7953(*l*), the court noted that each of the six entities explicitly included is specifically defined, in subsections (m), (o), (p), (q),

---

[5] Under the doctrine of *in pari materia*, "statutes that relate to the same subject or that share a common purpose should, if possible, be read together to create a harmonious body of law." *People v Mazur*, 497 Mich 302, 313; 872 NW2d 201 (2015). However, statutes are not *in pari materia* if their scope and aims are distinct and unconnected. *Id*. In this case, the MMMA and the MMFLA are not *in pari materia* with the MRTMA. The MMMA and MMFLA were clearly intended to permit and facilitate the use of marijuana for medical purposes. MCL 333.26422; MCL 333.27101. The stated purpose of the MRTMA is to permit and regulate the nonmedical use of marijuana. MCL 333.27952. Therefore, the MRTMA need not be read *in pari materia* with the MMFLA and MMMA.

(r), (s). As the court correctly reasoned, this suggests "that the electors intended the definition of marijuana establishment to apply only to the entities regulated by the MRTMA."[6]

Plaintiff argues on appeal that if the Legislature had intended for the MRTMA's tax deduction provision to apply only to recreational facilities licensed under the MRTMA, then it could have limited the catch-all phrase at the end of the provision to that effect. Further, plaintiff argues, the Legislature "obviously knew when to limit the scope of the MRTMA's provisions to adult-use facilities, and it deliberately chose not to when defining the term 'marihuana establishment.' "

We are not persuaded. First, because the MRTMA was enacted through initiative, at issue is the intent of the electors, not the Legislature, and the electors' clearly expressed intent was that the MRTMA be concerned with adults' general (i.e., nonmedical) use of marijuana. Second, as the Court of Claims concluded, it is equally plausible that the drafters of the MRTMA could have expressly included medical marijuana facilities or provisioning centers within the definition of "marihuana establishment." The drafters knew how to address medical marijuana in other sections of the MRTMA. In fact, § 8 of the MRTMA states that the CRA shall not promulgate a rule that "[p]rohibits a marihuana establishment from operating at a shared location of a marihuana facility operating pursuant to the [MMFLA] . . . ." MCL 333.27958(3)(c). Used in this way, the term "marihuana establishment" can only mean a marijuana-related business under the MRTMA, not under the MMFLA. We think the same meaning was intended under MCL 333.27953(*l*) and MCL 333.27962.[7]

Plaintiff also argues that there would be no need to specifically exempt medical marijuana facilities from the excise tax if they were clearly not included as "marihuana establishments" in the first instance, therefore rendering the exemption surplusage. However, the rule against surplusage is not absolute, and legislatures occasionally employ redundancy to ensure the inclusion, or exclusion, of all relevant conduct; therefore, the rule against surplusage must be

---

[6] "Under the canon of *ejusdem generis*, when general rules follow a designation of particular subjects, the meaning of the general rules will ordinarily be presumed to be and construed as restricted by the particular designation and as including only things of the same kind, class, character or nature as those specifically enumerated." *Favot v Brown*, ___ Mich App ___, ___; ___ NW3d ___ (2025) (Docket Nos. 368733, 368734); slip op at 5 (quotation marks and citation omitted). Facilities licensed under the MMFLA are not not "of the same kind, class, or character, or nature" as the entities "specifically enumerated" in the MRTMA's statutory definition of "marihuana establishment," which are all entities defined by and regulated under the MRTMA.

[7] Nor is it necessarily a mystery why the catch-all phrase in MCL 333.27953(*l*) was included. As defendant points out, the MRTMA authorizes the CRA to promulgate rules to "[p]rovide for the issuance of *additional* types or classes of state licenses to operate marihuana-related businesses." MCL 333.27958(2)(a) (emphasis added). Therefore, defining "marihuana establishment" to include "any other type of marihuana-related business licensed by the [CRA]," MCL 333.27953(*l*), ensures that any new types or classes of such businesses authorized through administrative rulemaking will be covered by the statutory definition.

applied " 'with judgment and discretion, and with careful regard to context.' " *People v Burkman*, 513 Mich 300, 319 n 6; 15 NW3d 216 (2024), quoting Scalia & Garner, *Reading Law: The Interpretation of Legal Texts* (St. Paul: Thomson/West, 2012), pp 176-177, 179. Additionally, when the MRTMA was originally approved by the electorate, the term "marihuana establishment" did not appear in its section establishing the excise tax; the term was added by the Legislature in 2023 along with language explicitly exempting medical marijuana.[8] The Legislature's use of statutory terms and exemptions in 2023 says little about the intent of the electorate in 2018. Viewing the exemption of medical marijuana facilities from the excise tax in the context of the MRTMA as a whole, and mindful of our "duty of judicial restraint" when interpreting initiatives, *Hartwick*, 498 Mich at 210, we decline to interpret the MRTMA's definition of "marihuana establishment" as encompassing medical marijuana facilities.

Next, plaintiff contends that ambiguities in the language of a tax statute must be resolved in favor of the taxpayer. But this contention is not supported by Michigan law. The Court of Claims concluded that this case did not require construction of a tax statute, and found no ambiguity in the language of the MRTMA. However, even if the deduction in MCL 333.27962 renders the latter a tax statute, Michigan law requires that tax exemptions and deductions be "construed narrowly in favor of the government," yet consistent with legislative intent. *Ally*, 502 Mich at 492. In this case, the Court of Claims did not reach a conclusion contrary to the intent of the electors in passing the MRTMA, and the issue of the deduction for ordinary and necessary business expenses should not be resolved in favor of plaintiff on this basis.

Plaintiff argues that the MMFLA's provision lifting the 3% tax on medical marijuana facilities 90 days after passage of a law authorizing the nonmedical use of marijuana, MCL 333.27601, indicates the Legislature's anticipation of a "more comprehensive future regulatory

---

[8] As originally enacted, § 13 of the MRTMA provided: "In addition to all other taxes, an excise tax is imposed on each *marihuana retailer* and on each *marihuana microbusiness . . . .*" MCL 333.27963, as enacted by 2018 IL 1 (emphasis added). In 2023, that section of the MRTMA was amended to provide, in relevant part:

> (1) Except as otherwise provided in subsection (4), in addition to all other taxes, an excise tax is imposed on each *marihuana establishment . . . .*
>
> * * *
>
> (4) The tax imposed under subsection (1) does not apply to any of the following:
>
> * * *
>
> (b) Marihuana sold or otherwise transferred under the [MMMA]
>
> (c) Marihuana sold or otherwise transferred under the [MMFLA].
>
> [MCL 333.27963, as enacted by 2023 PA 166 (emphasis added).]

scheme that would govern, among other things, the taxation of medical marijuana," and therefore that the Legislature intended for the MRTMA's tax deduction to apply to both adult-use and medical marijuana facilities. However, the Legislature's intent in drafting the MMFLA is not relevant to the electorate's intent in passing the MRTMA two years later. It is clear that the Legislature, in passing the MMFLA, intended that medical marijuana be taxed at the rate of 3%, and it seems equally clear that the Legislature intended for some taxation to continue after the enactment of a statute authorizing the nonmedical use of marijuana. However, the MRTMA, passed by initiative, does not address the taxation of medical marijuana facilities.

Finally, plaintiff argues that the collective intent of the MMMA, MMFLA, and MRTMA is to treat medical marijuana "at least as favorably as adult-use facilities, if not more so." The Court of Claims decision does so. Although medical marijuana facilities may not benefit from the deduction of ordinary and necessary business expenses, they are, nevertheless, permitted to deduct the costs of goods sold and other business expenses, are not subject to the security and other limitations or restrictions of the MRTMA and, most importantly, are not subject to the 10% excise tax imposed on the sale of adult-use marijuana.

The intent of the electorate in both the MMMA and the MRTMA is clearly expressed. The MMMA's only concern is the use and regulation of medical marijuana. The MRTMA's only concern is the use and regulation of recreational marijuana. Several provisions in the MRTMA clearly state that they do not apply to medical marijuana use or facilities. If the drafters had intended to include medical marijuana facilities as "marihuana establishments," they would have said as much. Moreover, "[a]gency interpretations of statutes are generally entitled to 'respectful consideration' and should not be overruled without 'cogent reasons.' " *Cannarbor, Inc v Dep't of Treasury*, ___ Mich App ___, ___; ___ NW3d ___ (2025) (Docket No. 368901); slip op at 4, quoting *In re Complaint of Rovas Against SBC Mich*, 482 Mich 90, 103; 754 NW2d 259 (2008). Plaintiff has offered no cogent reasons to overrule defendant's interpretation of the MRTMA or reverse the decision of the Court of Claims in this case.

Affirmed.

/s/ Allie Greenleaf Maldonado
/s/ Daniel S. Korobkin
/s/ Christopher M. Murray

-8-